[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10227

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KEVIN DEANE JONES,
a.k.a. Kevin Jones,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cr-00021-WWB-LHP-1

_____

Before JORDAN, BRASHER, and ABUDU, Circuit Judges

PER CURIAM:

Kevin Jones, a convicted felon living in Florida, manufactured ricin, a biological agent. He planned to put the ricin in a toy water gun and use it against his estranged wife, M.J., who lived in Texas. M.J. first alerted the FBI about Mr. Jones' plan, which was confirmed by Mr. Jones' fiancée. The FBI arrested Mr. Jones after he put a toy water gun containing ricin in his truck. While executing a search warrant at Mr. Jones' storage locker, the FBI seized a rifle, a Ruger SR .22 semi-automatic pistol, a firearm silencer, and about 3,000 rounds of ammunition.

Following the filing of a superseding information, Mr. Jones pled guilty—pursuant to a plea agreement—to two federal charges: (1) possession of a biological agent and delivery system, in violation of 18 U.S.C. § 175(b); and (2) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The presentence investigation report calculated the advisory guideline range as 37–46 months of imprisonment.

Considering the issue a "very close call," the district court at sentencing overruled the government's objection to the presentence investigation report for not using the attempted murder guideline, U.S.S.G. § 2A2.1. *See* D.E. 96 at 28–29. But the district court then varied upward and sentenced Mr. Jones to 120 months of imprisonment. It did so based on (a) the serious, sophisticated, and premediated nature of the § 175(b) offense; (b) Mr. Jones'

intent to harm M.J. with the ricin he had manufactured; (c) the fear Mr. Jones instilled in M.J.; (d) the danger Mr. Jones created for the public with the ricin he manufactured; (e) Mr. Jones' 12 prior convictions, including some for crimes of violence; (f) Mr. Jones' possession of firearms as a convicted felon; and (g) the need to protect the public from future harm. *See* D.E. 96 at 59–63.

Mr. Jones now appeals, raising a number of issues. For the reasons which follow, we affirm.

First, Mr. Jones argues that the district court erred, and violated his due process rights, by allowing M.J. to read her victim impact statement at the sentencing hearing. In Mr. Jones' view, M.J. was not a "victim" of his § 175(b) offense for purposes of the Crime Victims' Rights Act, 18 U.S.C. § 3771(b), because she was not "directly and proximately harmed as a result of the commission of [his] Federal offense." 18 U.S.C. § 3771(e)(2)(A). And her victim impact statement, he continues, constituted prejudicial hearsay that rendered his sentencing hearing fundamentally unfair.[1]

Contrary to Mr. Jones' contention, the district court could have properly considered M.J. to be a victim of his § 175(b) offense even though she was not physically harmed. She was panicked when she learned of Mr. Jones' plan to attack her with ricin, and she continued to suffer anxiety even after his arrest. *See* D.E. 96 at

---

[1] Mr. Jones' plea agreement contained an appeal waiver, *see* D.E. 55 at 12, but the government does not seek to enforce the waiver. We therefore do not address it.

41–43.  Under the circumstances, the district court did not err in allowing M.J. to read her victim impact statement.  *See United States v. Maldonado-Passage*, 4 F.4th 1097, 1103 (10th Cir. 2021) ("[W]hen a defendant's commission of a crime results in emotional or pecuniary harm, the harmed person qualifies as a crime victim under the CVRA . . . . [B]ecause Maldonado-Passage's plan to have Baskin murdered was both the but-for and proximate cause of . . . [her] emotional and pecuniary injuries, the district court acted within its discretion in allowing Baskin to stay in the courtroom as a crime victim under the CVRA.").

Mr. Jones did not lodge a constitutional objection to M.J. reading her victim-impact statement below, so we review his due process claim for plain error.  *See United States v. Harris*, 741 F.3d 1245, 1248 (11th Cir. 2014); Fed. R. Crim. P. 52(b).  There is no plain error here because (a) the victim-impact statement was attached to the presentence investigation report, *see* PSR at ¶ 36 & Attachment 1, and Mr. Jones did not object to it; (b) Mr. Jones could have called M.J. as a witness at the sentencing hearing and cross-examined her about what she said in her victim-impact statement but chose not to do so; and (c) the district court did not rely on the portions of the statement that Mr. Jones finds particularly objectionable (e.g., the statements about the divorce/custody dispute between M.J. and Mr. Jones).

Second, Mr. Jones asserts that the district court erred by placing significant weight on the victim-impact statement and his arrests for domestic violence.  He also contends that the district court

23-10227                Opinion of the Court                5

improperly relied on the unproven facts in the arrest records to vary upward. He therefore argues that his sentence is substantively unreasonable, because the district court gave significant weight to improper factors. *See United States v. Irey*, 612 F.3d 1160, 1189–92 (11th Cir. 2010) (en banc).[2]

Reviewing for abuse of discretion, *see Irey*, 612 F.3d at 1189–92, we disagree on both points. To the extent that Mr. Jones reiterates his objection to the admission of the victim-impact statement, we again reject the argument. Insofar as Mr. Jones challenges the district court's consideration of his arrests, our review of the record indicates that the district court relied on his convictions—for which he received zero criminal history points—and not his arrests for domestic violence. *See* D.E. 96 at 62 ("You have 12 criminal convictions. Some of those were crimes of violence."). Finally, some of Mr. Jones' prior convictions did involve violent conduct. He had three breaking and entering convictions in 1991 based on incidents taking place on different days. *See* PSR at ¶¶ 66, 67, 69, 70. And in a state court proceeding related to his 2008 criminal mischief conviction, a state court granted his then-girlfriend an order of protection. In that proceeding, Mr. Jones "stipulated that the offense was an act of domestic violence." PSR at ¶ 74. We therefore have no need to address whether a district court can properly rely on a defendant's arrests (and/or the narratives for those arrests) in deciding to vary upwards from the advisory guideline range.

---

[2] This is the only substantive unreasonableness argument Mr. Jones makes.

Third, Mr. Jones contends that his § 922(g)(1) felon-in-possession conviction must be vacated given the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17–21 (2022), which he says abrogated Eleventh Circuit precedent—specifically *United States v. Rozier*, 598 F.3d 768, 770–71 (11th Cir. 2010)—upholding the constitutionality of § 922(g)(1) under the Second Amendment.   But we recently rejected a similar argument and held that *Bruen* did not abrogate *Rozier*.  *See United States v. Dubois*, ____ F.4th ____, 2024 WL 927030, at *3–*6 (11th Cir. Mar. 5, 2024). As a subsequent panel, we are bound by *Dubois*, which forecloses Mr. Jones' *Bruen*-based challenge to his § 922(g)(1) conviction.

Finally, Mr. Jones concedes that his Commerce Clause challenge to § 922(g)(1) is foreclosed by binding precedent. We therefore do not address it further. *See* Appellant's Br. at 51–52 (citing *United States v. Pritchett*, 327 F.3d 1183, 1185 (11th Cir. 2003)).

**AFFIRMED.**